738 So.2d 1040 (1999)
Carlas Ann Sexton FOLSE
v.
Darryl Gerard FOLSE.
No. 98-C-1976.
Supreme Court of Louisiana.
June 29, 1999.
*1041 Floyd J. Falcon, Jr., David L. Avant, Avant & Falcon, Baton Rouge, Counsel for Applicant.
Vincent Anthony Saffiotti, Alan Stuart Fishbein, Fishbein & Downs, Baton Rouge, Counsel for Respondent.
KNOLL, Justice.[*]
This case involves a custody proceeding awarding the plaintiff mother sole custody of her two children, a daughter C.F., born December 6, 1990, and a son, K.F., born in 1988, on grounds that the father sexually abused C.F. The father's visitation rights were suspended until he could show that he had successfully completed a treatment program designed for sexual abusers. The correctness of the family court's ruling turns on whether the hearsay statements of C.F. were admissible since the minor child did not testify. The First Circuit Court of Appeal reversed the family court,[1] finding C.F.'s hearsay statements were not admissible. For the following reasons, we reverse the court of appeal, finding that under the circumstances of this case, the relaxed evidentiary standards used to determine custody, as expressed in La.Code Evid. art. 1101, are applicable to custody determinations under the Post-Separation Family Violence Relief Act ("PSFVRA") embodied in La.R.S. 9:361-369.

Facts and Procedural History
On July 15, 1995, while bathing her four-year-old daughter, plaintiff (C.F.'s mother) observed that C.F., who was sprawled on her back in the bathtub, had positioned her feet by her hips and was rubbing her hand back and forth on her private parts. *1042 C.F.'s mother asked her daughter what she was doing and C.F. replied that she was "playing a game." When she was asked who showed her how to play the game, C.F. responded: "Daddy, my Daddy."
C.F.'s mother immediately took C.F. to her sister Nicole's home and told her to ask C.F. about the "game" without giving any other details. After discussing the game with C.F. alone, Nicole announced to C.F.'s mother: "I think there's a problem." The three then went to C.F.'s grandmother's home where Nicole and the grandmother spoke with C.F. about the "game." As a result, Nicole called the sheriffs office, and a deputy conducted an interview in the grandmother's home that same day. The deputy advised C.F.'s mother not to return home and to seek a divorce.
The next day, C.F. was interviewed at the Sheriffs Office. Following the interview, deputies advised C.F.'s mother that a warrant would be issued for the father for child molestation. C.F.'s mother filed for divorce the following day, July 17, 1995. On July 18, 1995, the court granted the mother ex-parte custody and ordered no visitation between C.F. and her father. A stipulated judgment followed on September 6, 1995, whereby the mother was granted "provisional" custody and the father was granted no visitation.
At the August, 1996 custody hearing, the mother called C.F. as a witness and requested that testimony be taken in chambers. The court agreed, commenting that its usual procedure, followed "hundreds of times," was "to have the child interviewed in chambers on tape out of the presence of parents." However, the court deferred the child's testimony to the end, explaining that "in interviewing young children I always find it better to save them to the end. Let the facts develop which I think makes for a better and usually more productive interview of the child involved." The court also recounted that on many occasions, after all the other testimony was in, both sides agreed that it was unnecessary to put the child through the trauma of testifying. There was no objection to the order of testimony.
Because C.F. was expected to testify, the court allowed the mother to present the testimony of Nicole and the grandmother in addition to her own. The mother testified regarding her daughter's conduct and verbal explanation, her action in presenting the child to Nicole and the grandmother, her lack of prior plans for divorce, and to other significant observations and events. She testified that when C.F. was two years old, C.F. asked if she could watch the video from the "101 Dalmatians" box that was in the bottom drawer of C.F.'s dresser along with her other videos. When C.F.'s mother inserted what should have been a Disney movie into the VCR in C.F.'s bedroom, two naked people in a bathtub appeared on the screen. The mother removed the tape from the child's bedroom. That night, when C.F.'s father returned from work, the mother confronted him in the kitchen. C.F.'s father took the tape and put it on a high kitchen cabinet shelf, out of the mother's reach. In court, the father admitted that he had hidden the sexually explicit videotape depicting bathtub scenes, masturbation, and oral sexacts which the child later demonstrated. He attempted to mitigate the damaging evidence by alleging that he had hidden the tape in the child's room before C.F. was born. He denied that the hiding place was inside a Disney video container.
The mother testified that before the bathtub incident, C.F. had complained about pain in her private parts. The mother also related that on numerous occasions when she returned home from an errand, she found her son K.F. playing outside while C.F. and her father were in the house alone with all the doors locked. Significantly, the mother explained that the carport door was normally left unlocked for the ingress and egress of the children. The father admitted that while he and C.F. were inside and K.F. was *1043 outside, all the doors were locked on occasion.
Nicole testified that on the same day as C.F. told her mother about the "game," C.F. told her that her daddy taught her to tickle her privates. C.F. demonstrated how the "game" was played by lying on her back with her legs spread apart and bent at the knee, and pointed to her privates. Nicole testified that C.F. also told her that she put her mouth on her daddy's private and that he put his mouth on hers. C.F. demonstrated what she did by putting her mouth over the top of the bedpost, and demonstrated what she said her father did by licking the side of the post.
The grandmother testified that C.F. told her about the "game" on the same day as C.F. first told her mother and Nicole. The grandmother's testimony was consistent with that of the other witnesses: C.F. reported that she had put her mouth on her daddy's private and that he had put his mouth on hers. The grandmother asked C.F. questions to test the veracity of C.F.'s statements. C.F. told her grandmother that when she played the game she was a grownup, that she played the game only with her father, and that she was telling the truth.
The mother also presented testimony from Susan Herrod, who had treated C.F. for sexual abuse beginning October, 1995. Herrod was qualified as an expert in the treatment of abused children and is board certified. Herrod testified that during treatment, C.F.'s statements were consistent. During play therapy, C.F. described her father putting his mouth on her private parts and her putting her mouth over her father's private parts. Herrod referred the child to a physician to check for any physical evidence of sexual abuse, but asserted that lack of physical evidence did not mean that sexual abuse had not occurred.
David Sexton, Jr., the mother's brother, testified that on many occasions prior to July 15, 1995, he had observed Folse lick his child's tongue with his own. C.F.'s father denied licking C.F.'s tongue and denied sexually abusing her. But he did not deny that C.F. had made the statements attested to. In defense, the father alleged that C.F. had been "programmed" because her mother wanted a divorce. C.F.'s father also presented evidence to diminish the credibility of the mother's case and to minimize the impact of the mother's evidence.
Dr. Melvin Murrill, who examined C.F. on July 17, 1995, at his Child Protection Services office, testified that there was no physical evidence that C.F. had been sexually abused.[2] However, Dr. Murrill conceded that someone could touch the vaginal area and hurt the child without leaving any evidence. Dr. Cary Rostow, the father's expert psychologist, offered testimony supporting that conclusion. He testified that of those children whom he had treated for sexual abuse and who had undergone physical examinations, only about half evidenced any physical signs of the abuse.
The mother expected Dr. Kumari Moturu, the child's psychiatrist, to testify. However, Dr. Moturu was not present at the August, 1996 custody hearing and faxed a message that she was ill. Thereafter, on grounds that the witness was unavailable, the mother attempted to submit Dr. Moturu's sworn discovery deposition that had been taken at the notice of defense counsel. The court sustained the defense counsel's objection to the introduction of the deposition testimony and rescheduled Dr. Moturu and C.F. to testify at a later date, with C.F. to be the last witness. Ultimately, the court did not hear testimony from either witness. Dr. Moturu did not testify because of "poor *1044 cooperation." The mother also withdrew her permission for C.F. to testify, based on the recommendation of Susan Herrod that substantial harm could come to C.F. if she were to testify.
The court recognized the dilemma created by presentation of the hearsay evidence of C.F.'s statements in advance of C.F.'s testimony. Unable to go back and correct the order of testimony, the trial judge was forced to change his approach. Since C.F. was no longer going to testify, the judge had to determine whether the hearsay testimony could be considered in deciding the ultimate issues of custody and visitation. The court looked to LA.CODE EVID. art. 1101(B) and LA.CODE EVID. art. 102. Article 102 provides that the Code of Evidence should be interpreted to promote justice and "fairness." Article 1101(B) provides that a relaxed evidentiary standard should be used in custody cases to advance the purposes of the custody proceeding. The court recognized that the rights of both parties must be protected, and noted that the central focus in custody determinations was on the best interests of the child. The court reasoned that initial or other trustworthy complaints of sexually assaultive behavior were not excluded under the "other sufficient cause" provision of LA.CODE EVID. art. 804(A) if the declarant was unavailable as a witness. The court further reasoned that excluding the hearsay evidence "would violate this court's duty to protect the best interest of this child," citing Turner v. Turner, 455 So.2d 1374 (La.1984). Therein the judge's duty was likened to being a "fiduciary on behalf of the child." Id. at 1379. Therefore, the court re-opened the case to take evidence from Ms. Herrod regarding the potential harm to C.F. in order to assess whether C.F. was "unavailable." In advance of the hearing, the court directed that if it ruled that the child was "unavailable," the case would be decided considering the hearsay and that if it ruled that the child was not unavailable, C.F.'s mother would be given an opportunity to call C.F. as a witness.
At the hearing wherein C.F.'s availability was to be determined, Ms. Herrod testified concerning the potential harm to C.F. Herrod testified that objectives of treatment included eliminating symptomatic behavior and allowing the child to move on and put the memories of abuse behind her. Herrod stated that treatment had been successful and that the trauma of testifying could un-do the treatment and usher a return to the pre-treatment symptoms. Herrod also testified that if C.F. were to testify, C.F.'s testimony might be inconsistent with her prior statements. Herrod indicated that near the time of the initial hearing, C.F. had begun to recant her statements regarding the abuse after inquiring about what would happen to her father. C.F.'s statements were also subject to inconsistency because treatment had been successful, because of C.F.'s tender years, and because of the long lapse in time since July 15, 1995.
Based on Herrod's testimony, the trial judge determined that C.F. was "unavailable" pursuant to the "other sufficient cause" provision of LA.CODE EVID. art. 804(A). Thereafter, the judge deemed the hearsay statements admissible regarding the complaints of sexually abusive behavior pursuant to LA.CODE EVID. art. 804(B).
The trial court then went through the fact-finding process by weighing all the evidence. It found "beyond dispute" that C.F. had alleged that her father had sexually abused her. The judge found veritable consistency in the child's statements to her mother, her grandmother, Nicole, and Herrod (whose testimony was admitted because it related to treatment). The court found "bankrupt" the father's claim that C.F. had been "programmed" because the mother wanted a divorce. The couple had not been estranged before the July, 1995 report of sexual abuse, and divorce was filed pursuant to LA.CIV.CODE art. 102. In its written reasons, the court stated: "The bulk of Father's case is an attempt to discredit witnesses to what the child said about the abuse and Father. But, none of *1045 that evidence seriously discredits anyone, some is suspect, and none touches Susan Herrod." The court added that the medical testimony offered by the father was of "no real significance" and that it did not help the father's case. The judge also recognized that cases proving sexual abuse must rely on circumstantial evidence since it was to be expected that there would be no witness to the actual act of sexual abuse.
After weighing all the evidence admissible, the trial judge determined that C.F.'s father had sexually abused her. After finding sexual abuse as a matter of fact, the trial court applied the mandatory custody and visitation provisions of the Post-Separation Family Violence Relief Act ("PSFVRA") embodied in La.R.S. 9:361-369. The trial judge awarded the mother sole custody and denied the father visitation pending his successful completion of the sexual abuse program, as required by the PSFVRA.
The court of appeal reversed. It concluded that the relaxed evidentiary standard of LA.CODE EVID. art. 1101(B)(2) did not apply to PSFVRA custody cases. Thereafter, without giving reasons, the appellate court excluded Herrod's testimony from consideration. It then determined, by rigid application of LA.CODE EVID. art. 804(A), that C.F.'s testimony was available. The appellate court then found that the initial and "otherwise trustworthy" complaints of C.F.'s mother, Nicole and the grandmother were inadmissible hearsay. By rigid application of the rules of evidence, the court of appeal had eliminated from its consideration almost all the evidence. Therefore, the court found insufficient support for a finding of sexual abuse and found it necessary to remand the case for a new custody determination under the ordinary "best interests" standard.

The PSFVRA
The State has a compelling interest in protecting children from sexual abuse. Globe Newspaper Co. v. Superior Ct., 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Protecting children from family violence, including sexual abuse, is the primary purpose of the PSFVRA. La.R.S. 9:361. To effectively protect children, the Legislature has imposed a mandatory suspension of custody and visitation against those parents proven to have sexually abused their children. The PSFVRA provides, in pertinent part:
If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds, by a preponderance of the evidence, that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children's best interest.
La.R.S. 9:364(D).
The Legislature enacted the PSFVRA because it recognized that the discretion formerly granted to judges regarding custody and visitation in sexual abuse situations was wholly inadequate in curbing family violence, including sexual abuse of children. La.R.S. 9:361[3]; La.R.S. *1046 46:2131[4]; 1993 La. Acts 261, § 9, repealing La.R.S. 9:574 (wherein a judge had discretion to grant visitation to a parent who had sexually abused his or her child). Through the PSFVRA, therefore, the Legislature has expressed its determination that the best interests of the child would best be served by suspending the abusive parent's visitation pending that parent's completion of the program designed to inhibit further abuse. At issue, then, is not the innocence or guilt of the parent, but the best interests and custody of the child. La.R.S. 9:361; La.R.S. 9:364; In re A.C., 93-1125 (La.10/17/94), 643 So.2d 743, on reh'g, cert. denied sub nom. A.St.P.C. v. B.C., 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995).
With respect to the best interests of the child, the Legislature noted that general custody and visitation laws were based on an assumption that divorcing parents acted in their children's best interests. However, it observed that "laws designed to act in the children's best interest may actually effect a contrary result due to the unique dynamics of family violence." La.R.S. 9:361. Moreover, the Legislature was concerned that child custody or visitation provided further opportunities for the family violence, including sexual abuse, to continue following divorce or separation. La. R.S. 9:361. Therefore, once a judge had determined, as a matter of fact, that a parent had sexually abused his or her child, the PSFVRA removed the judge's discretion regarding custody and visitation, and mandated that no visitation occur between the abused child and abusive parent until the parent had successfully completed treatment designed to curb the parent's harmful behavior. La.R.S. 9:364. Because of the harsh results of a judge's finding of abuse, the Legislature raised the standard of proving the abuse from the ordinary "preponderance" standard to "clear and convincing." In re A.C., 643 So.2d at 743. Significantly, the Legislature, while enhancing the burden of proof, did not remove any gate-keeping discretion from the judge regarding admissibility of evidence.
It is important to note the distinction between issues of admissibility of evidence and burdens of proof. See generally FRANK L. MARAIST & HARRY T. LEMMON, 1 LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 11.7(1) & (7) (1999) (where burden of proof requires a plaintiff to produce evidence in sufficient strength to meet the evidentiary standard, and admissibility concerns relevancy and competency). "Issues of admissibility, based upon foundation, verification and authenticity and bearing on the trustworthiness and reliability of the documents, differ from the sufficiency of proof, which goes to the weight and reliability of the evidence offered to meet the burden of proof." Cole Oil & Tire Co. v. Davis, 567 So.2d 122, 131 (La.App. 2 Cir.1990). The standard applied to each issue may also differ. State v. Lobato, 603 So.2d 739 (La.1992) (The standard for determining the admissibility of evidence is less than what is required to convict.). A trial court's determinations regarding what evidence is admissible for the trier of fact to consider and whether a plaintiff has sufficiently proven its case will not be overturned absent clear error. Id.; United States v. Taylor, 802 F.2d 1108 (9th Cir.1986), cert. denied, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987).

Applicability of LA.CODE EVID. art. 1101(B)
The Legislature has enacted special rules which provide for a relaxed evidentiary standard to be applied in child custody determinations in order to promote the purposes of the proceeding.[5]
*1047 LA.CODE EVID. art. 1101(B) provides, in pertinent part:
[I]n the following proceedings, the principles underlying this Code shall serve as guides to the admissibility of evidence. The specific exclusionary rules and other provisions, however, shall be applied only to the extent that they tend to promote the purposes of the proceeding.
. . . .
(2) Child custody cases.
Clearly, the Legislature has concluded that the best interests of children are not served by strict application of the rules of evidence. To decide whether the relaxed evidentiary standard applicable to custody determinations in general applies to custody determinations pursuant to the PSFVRA, we must first consider the statutory language itself. Touchard v. Williams, 617 So.2d 885 (La.1993).
On its face, the statute manifests an intent that the trial judge not be hamstrung by strict application of the rules of evidence. Instead, it expresses an intent that the purpose of the determination, in this case custody, is of paramount importance. Thus, the trial judge has been given very broad discretion regarding the admissibility of evidence in order that the intended purpose of the proceeding might be served.
There is no indication that LA. CODE EVID. art. 1101 is inapplicable to certain types of custody determinations. When the Legislature enacted the PSFVRA just four years after enacting article 1101, it did not express an intent that article 1101 evidentiary rules not apply. Nor did the Legislature amend article 1101 to make its provisions inapplicable to PSFVRA custody determinations. It is presumed that the Legislature enacts laws with deliberation and with full knowledge of all existing laws on the same subject. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184. Therefore, it must be presumed that the Legislature intended that the evidentiary rules applicable to custody determinations in general be applicable to custody determinations pursuant to the PSFVRA.
Our next consideration is whether the application of article 1101(B) to PSFVRA custody determinations is consistent with legislative intentthat is, to promote the purposes of the custody determination. It is well known and documented that sexual abuse of children is extremely difficult to detect because "the offense often takes place in secret, the victim is young, vulnerable, and reluctant to testify, and there is often no physical or other evidence the abuse took place." State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, 962. The evidence is rarely direct, but is circumstantial. Moreover, reports of family violence are exceedingly lower than their actual occurrence. La.R.S. 9:361; La.R.S. 46:2121(C). Thus, the purposes of unearthing the truth under the difficult circumstances of child sexual abuse would be served by permitting a judge to use the rules of evidence as guides rather than blinders because the relaxed standard is responsive to the circumstances in which child abuse occurs and is exposed.
Application of a relaxed evidentiary standard is also consistent with public policy regarding the welfare of children. Moreover, special consideration in matters concerning juveniles is not new. A relaxed evidentiary standard has been applied in considering placement of children. State in the Interest of CW v. Womack, 28,310 (La.App. 2 Cir. 2/28/96), 669 So.2d 700, superceded on other grounds by LA.CH. CODE art. 606 A(5); LA.CODE EVID. art. 680. Even in the criminal context, a *1048 relaxed evidentiary standard is applied in cases involving sex crimes against children. State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960 (where evidence of uncharged misconduct is admissible to show "lustful disposition"). A relaxed evidentiary standard has also been applied to minimize the effect of the harsh courtroom experience. Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); Michael H. Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 MINN. L. REV. 523, 558-60 (1988) (citing state statutes providing relief). The basis of the relaxation of the rules reflects a state policy favoring the interests of the child. Miller, 718 So.2d at 960; State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037.
The court of appeal in the case sub judice erroneously concluded that LA. CODE EVID. art. 1101(B) did not apply to PSFVRA custody determinations. The appellate court relied on In re A.C., 643 So.2d at 743, which held that mandatory suspension of custody and visitation pursuant to the PSFVRA was effective only when sexual abuse was proven by the elevated clear and convincing standard.[6] The appellate court's misplaced reliance on In re A.C. cuts against the clear legislative intent that only the burden of proof be elevatednot the admissibility of evidence. Moreover, the appellate court ignored the fact that there are rarely witnesses to sexual abuse. The First Circuit's ruling, if affirmed, would stand for the proposition that no hearsay evidence would be allowed to prove a case that required proof by clear and convincing evidence. Since that was not the intent of the Legislature, the court of appeal's ruling was in error.

Unavailability of Witness
The family court decided, as a matter of fact, that the child who had reported the abuse was unavailable. The determination of unavailability was based on LA. CODE EVID. art. 804(A)(4)'s "unavailability" provisions for reasons of "other sufficient cause."[7] While a determination of unavailability has grown around particular recurring fact situations such as refusal to testify, privilege, or lack of memory, "anything which constitutes unavailability in fact ought to be considered adequate." 2 MCCORMICK ON EVIDENCE § 253, at 131 (John W. Strong ed., 4th ed.1992); see also Official Comments to LA.CODE EVID. 804, n.d. "[T]he term `unavailable' should be broadly construed." GEORGE W. PUGH, ROBERT FORCE, GERARD A. RAULT, JR., & KERRY TRICHE, HANDBOOK ON LOUISIANA EVIDENCE LAW, 507 Authors' Notes to La. Code Evid. art. 804, n.1 (1998).
Determining unavailability is a preliminary question under LA.CODE EVID. art. 104(A). The judge may consider otherwise inadmissible evidence in determining the preliminary factual question. PUGH, FORCE, AND RAULT, supra, at 279; Authors' Notes to LA.CODE EVID. art. 104, n.3 (1998); LA.CODE EVID. art. 104, Official Comment (c). Factual questions and credibility determinations are reviewed under a manifest error standard. Rosell v. ESCO, 549 So.2d 840 (La.1989). Credibility determinations are within the sound discretion of the *1049 court, and absent a determination that the trial court abused its discretion, the court's decision will not be overturned. Id.; State v. Nall, 439 So.2d 420, 424 (La.1983) (unavailable due to loss of memory).
In the case sub judice, the court took testimony regarding whether the child's testimony was, indeed, unavailable. The court found C.F. unavailable, relying on the testimony of Susan Herrod, who was qualified as an expert in the treatment of sexually abused children, and who had, in fact, treated C.F. following the reports of sexual abuse. The appellate court reversed, concluding that C.F. was not unavailable within the meaning of the statute. The appellate court found insufficient as "other sufficient cause" Herrod's testimony that while C.F. was capable of testifying, she "just d[id]n't think it would be good for her." However, the trial court's written reasons reflect a more serious rationale for finding the testimony of C.F. unavailable within the meaning of the statute.
The trial judge relied on the whole of Ms. Herrod's testimony at the "unavailability" hearing, and specified in its written reasons that it found C.F. unavailable because "requiring C.F. to testify could harm the child by undoing the progress made to alleviate the child's problems for which Mother sought treatment." The court laid out the symptoms alleviated by Herrod's treatment and noted Herrod's testimony that C.F. had begun to recant her previously consistent statements because of the success of C.F.'s treatment, her tender years, and the long lapse of time, and that the inconsistency first appeared when C.F. expressed concern over what would happen to her father.
Children often make poor witnesses because of their age, immaturity, and courtroom intimidation. Charles W. Ehrhardt & Ryon M. McCabe, Child Sexual Abuse Prosecutions: Admitting Out-of-Court Statements of Child Victims and Witnesses in Louisiana, 23.1 S.U. L. REV. 1 (1995). Children like C.F., whose initial complaints were elicited through questioning, are more likely to be traumatized by the courtroom experience and more likely to recant before or during trial. Michael H. Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 MINN. L. REV. 523, 560 n. 192 (1988). Moreover, C.F.'s recent recantation based on the totality of the circumstances would make her testimony at a time following the initial hearing completely unhelpful.
The trial court did not make a determination based on the trauma generally experienced by young victims. Instead, its decision that C.F. was unavailable pursuant to the "other sufficient cause" provision of LA.CODE EVID. art. 804(A)(4) was fully grounded in the specific circumstances of the instant case. Such individualized determinations are consistent with sound procedural practice regarding the admission of child testimony. Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The court's finding of unavailability is also consistent with the notion of regarding unavailability not in terms of whether a witness is unavailable, but in terms of whether the testimony of a particular witness is unavailable. McCORMICK, supra, § 253, at 130-31. Accordingly, we see no abuse of discretion in the trial court's finding C.F. unavailable for "other sufficient cause."

Admissible Hearsay
When the testimony of a child who alleges sexual abuse is unavailable, the child's initial or otherwise trustworthy complaints are not excluded by the hearsay rule. LA.CODE EVID. art. 804(B)(5).[8]
*1050 A child's initial complaint often consists of responses to adult questioning, because a child may have no clear understanding of what has been done to her. State v. Garay, 453 So.2d 1003 (La.App. 4 Cir.1984). The responses fall within the rubric of "initial complaint" even if the report is made some time after the incident. State v. Prestridge, 399 So.2d 564, 572 (La.1981); State v. Adams, 394 So.2d 1204, 1212 (La.1981). C.F. first reported the sexual abuse in response to her mother's questions made after she observed C.F.'s uncharacteristic sexual display. The trial court correctly admitted that evidence as an initial complaint pursuant to LA.CODE EVID. art. 804(B)(5).
Other hearsay evidence is admissible when a witness is unavailable if the statements bear an adequate "indicia of reliability" based on a showing of "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In analyzing reliability, the court must examine the probative value of out-of-court statements. White v. Illinois, 502 U.S. 346, 355-58, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). Decisions must be made on a case-by-case basis, and must be gleaned from the totality of the circumstances. Maryland v. Craig, 497 U.S. 836, 857-58, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); Idaho v. Wright, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).
In this case, the issue of admissibility concerns hearsay statements made by C.F. to adults concerning her being the victim of sexual abuse. With respect to the reliability of evidence regarding sexual abuse, important consideration must be given to whether "the child's statement discloses an embarrassing event that a child would not normally relate unless true, ... or describes a sexual act beyond a child's normal experience." Michael H. Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 MINN. L. REV. 523, 532 (1988). Factors relating to reliability also include the "spontaneity and consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motivation to fabricate." Wright, 497 U.S. at 821-22, 110 S.Ct. 3139.
In the case sub judice, C.F. was only four years of age at the time she reported the sexual abuse. On the same day, July 15, 1995, C.F. reported the sexual abuse to her mother, her grandmother, and Nicole. The child's reports were consistent. In her reporting, C.F. displayed familiarity with fellatio and cunnilingus inconsistent with the experience of children of similar age. There has been no showing of a motive to fabricate; the trial court strongly expressed its finding that the father's allegations of motive were "bankrupt." The court utilized the special evidentiary rules to admit the probative evidence only upon finding the statements reliable and necessary for a just result premised on the child's unavailability to testify. The procedure used by the trial court in admitting the hearsay statements of the child comports with the admonition in Coy v. Iowa that there must be "individualized findings" necessitating deviation from the general rules. 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).
In reading LA.CODE EVID. art. 804(B)(5) in conjunction with LA.CODE EVID. art. 1101(B) and the PSFVRA, it is clear that the Legislature has expressed an overriding interest in protecting child victims of sexual abuse by encouraging the admission of reliable hearsay evidence for the trial judge to weigh. That interest is not subject to being "second-guessed." Craig, 497 U.S. 836, 855, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Under the totality of the circumstances in the case sub judice, the admission of the hearsay statements is warranted. Therefore, the appellate court erred in excluding the hearsay testimony properly considered by the trial judge.

*1051 Burden of proof

In determining custody under the PSFVRS, findings of sexual abuse must be made by clear and convincing evidence. La.R.S. 9:364(D).[9] The father argues that the family court found that he had sexually abused C.F. by a mere preponderance of the evidence rather than by the required clear and convincing evidentiary standard. The father cites the trial court's November 8, 1996 reasons for judgment, wherein the court states: "The issue in this case is whether or not Mother has established by a preponderance of the credible evidence that Father sexually abused their child." (Emphasis added.) Disagreeing with the father's characterization that the trial court made its determinations by a mere preponderance of the evidence, plaintiff points to the printed order, also issued on November 8, 1996, which reads as follows. "Having found by clear and convincing evidence that Darryl Gerard Folse has sexually abused [C.F.] within the meaning of La.R.S. 9:361-369, the court issues the following order." (Emphasis added.)
We have previously held that a judge's "slip of the tongue" is not reversible error. State v. Langendorfer, 389 So.2d 1271, 1276 (La.1980) (where judge's instruction regarding the waiver of Fifth Amendment rights might result in commission up to two years instead of twenty did not invalidate the plea); LaFrance v. Bourgeois, 97-376 (La.App. 5 Cir. 10/15/97), 701 So.2d 1026, 1029-30, writ denied, 97-2865 (La.2/13/98), 706 So.2d 995 (mistaken jury instructions).
In determining whether the judge used the incorrect standard or simply made a slip of the tongue, we must examine the trial court's overall analysis and determine which standard was actually applied. "Clear and convincing" is an intermediate standard
which requires that the fact be proven to a degree greater than that involved in proof by a `preponderance' of the evidence but to a degree less than involved in proof `beyond a reasonable doubt.' In other words, the existence of the disputed fact must be highly probable, that is, much more probable than its non-existence.
Succession of Bartie, 472 So.2d 578, 582 (La.1985).
It is clear that the trial court weighed all the relevant evidence. The court considered the description of the demonstration that indicated that C.F. had graphic knowledge of fellatio and cunnilingus generally unfamiliar to children of like age. The judge also considered symptoms of abuse and treatment response as expressed by Herrod under the "statements made during treatment" exception to the hearsay rule. LA.CODE EVID. art. 803(4).[10] The judge also weighed testimony from Dr. Murrill, the pediatrician who examined C.F. on July 17, 1995, after the report of sexual abuse. Dr. Murrill testified that there was no physical evidence of sexual abuse. The father argued, in part, that the absence of physical evidence of sexual abuse destroyed the mother's case. The father also attempted to discredit the mother's case by mischaracterizing her complaint as stating that penetration was alleged, and, since penetration would have *1052 been discovered by the examining physician, no abuse had occurred. It is true that the examining physician, Dr. Murrill, determined that no penetration had occurred. However, C.F. had not reported penetration, but hurtful touching. Dr. Murrill conceded that the touching might very well leave no traces of evidence. Dr. Murrill testified that the absence of physical evidence did not mean that the child had not been abused, and that the child's history was consistent with sexual abuse.
In deciding the issues, the trial court made credibility determinations. The court found "beyond dispute" that the child had alleged sexual abuse. Even the defendant father agrees that the child reported that he had sexually abused her. The court noted that C.F.'s reports were consistent until she became concerned for what might happen to her father. The court found that the father's claim that the child was "programmed" to report acts of sexual abuse "beyond belief and total[ly] unsupported by any evidence." The trial court also found "bankrupt" the father's claim of motive to program the child. The court found that attempts to discredit the mother's witnesses failed, that the father's evidence was "suspect," and that the evidence "compel[led]" the court to find in favor of the mother. The language used by the trial judge indicated that the "clear and convincing" evidentiary standard had actually been applied, and that words to the contrary were merely a slip of the tongue.

Decree
For the reasons expressed above, we find that the trial court's approach suffers from no infirmities warranting reversal. We find it significant that parental rights were not terminated, but limited. The family court judge did not abuse his discretion in finding the child unavailable to testify in court. Under the circumstances of this case, the relaxed evidentiary standards used to determine custody, as expressed in LA.CODE EVID. art. 1101, are applicable to custody determinations under the PSFVRA. Finally, the trial court used the correct standard in making its determinations.
REVERSED; FAMILY COURT'S JUDGMENT REINSTATED.
CALOGERO, C.J., and MARCUS, and VICTORY, JJ., dissent for reasons assigned by Court of Appeal.
NOTES
[*] Lemmon, J., not on panel. Rule IV, Part 2, § 3.
[1] Folse v. False, 97-0952 (La.App. 1 Cir. 5/15/98), 714 So.2d 224.
[2] The father, in attempting to discredit the mother's evidence, endeavored to negate the allegation of abuse because Dr. Murrill, who believed that there would have been evidence of finger penetration had it occurred, found no signs of penetration. However, the mother had not alleged penetration, but merely sexually abusive touching of the vaginal area, which Dr. Murrill conceded might not be accompanied by physical evidence.
[3] La. R.S. 9:361 provides:

The legislature hereby reiterates its previous findings and statements of purpose set forth in R.S. 46:2121 and 2131 relative to family violence and domestic violence. The legislature further finds that the problems of family violence do not necessarily cease when the victimized family is legally separated or divorced. In fact, the violence often escalates, and child custody and visitation become the new forum for the continuation of the abuse. Because current laws relative to child custody and visitation are based on an assumption that even divorcing parents are in relatively equal positions of power, and that such parents act in the children's best interest, these laws often work against the protection of the children and the abused spouse in families with a history of family violence. Consequently, laws designed to act in the children's best interest may actually effect a contrary result due to the unique dynamics of family violence.
[4] Section 2131 provides, in pertinent part:

The legislature finds that existing laws which regulate the dissolution of marriage do not adequately address problems of protecting and assisting the victims of domestic abuse.... It is the intent of the legislature to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection.
[5] One of Appellant's complaints is that LA. CODE EVID. art. 1101(B) should not apply because: "[t]he custody proceeding listed in Subparagraph (B)(2) refers to disputes between competing private parties, for example, custody disputes between parents. It is not intended to include actions to terminate parental rights brought by the State or its agencies." LA.CODE EVID. art. 1101, comt. h. In this case, the matter was brought by the mother as a custody proceeding. No termination proceeding was initiated. Moreover, unlike termination proceedings, custody determinations are not final. See Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738.
[6] The appellate court determined that article 1101(B) did not apply to PSFVRA custody cases stating: "The parent found to be a sexual abuser permanently loses all rights to unsupervised visitation." Folse, 714 So.2d at 225 (emphasis added) (citing In re A.C., 643 So.2d at 743). However, the court of appeal failed to note that where A.C. specifically discussed the PSFVRA, the Court concluded that whether, under the Act, loss of custody or unsupervised visitation was permanent was only "arguable." Id. at 746.
[7] LA.CODE EVID. art. 804(A)(4) provides, in pertinent part:

[A] declarant is `unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
. . .
(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness, infirmity, or other sufficient cause.
[8] Article 804(B) provides, in pertinent part: The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .
(5) Complaint of sexually assaultive behavior. A statement made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior.
[9] Section 364(D) provides:

If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds, by a preponderance of the evidence, that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children's best interest.
[10] Article 803 provides, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
(4) Statements made for purposes of medical treatment ... and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment....