<u>**NOT DESIGNATED FOR PUBLICATION**</u>

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2020 CA 0428

SHELIA HILLYARD

VERSUS

HARRY CORNELIUS, SHELTER MUTUAL INSURANCE COMPANY, AND
NATIONAL GENERAL ASSURANCE COMPANY

Judgment rendered____**MAR 2 5 2021**____

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C647256, Sec. 27

The Honorable Trudy M. White, Judge Presiding

* * * * *

| | |
|---|---|
| Scott M. Emonet<br>Philip J. House<br>Baton Rouge, Louisiana | Attorneys for Plaintiff/Appellant<br>Shelia Hillyard |
| Brent E. Kinchen<br>Gregory P. Aycock<br>Kolby P. Marchand<br>Baton Rouge, Louisiana | Attorneys for Defendants/Appellees<br>Harry Cornelius & Shelter Mutual<br>Insurance Company |
| Peter M. Donovan<br>Metairie, Louisiana | Attorney for Defendant/Appellee<br>National General Assurance Company |

* * * * *

**BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.**

JMM, concurs for reasons assigned.

**HOLDRIDGE, J.**

In this personal injury action, plaintiff, Shelia Hillyard, appeals a judgment entered in accordance with a jury verdict that dismissed her lawsuit after the jury found she failed to prove the causation element of her claim. We affirm.

## BACKGROUND

On April 30, 2015, Ms. Hillyard was driving a Pontiac G6 on Liberty Road in East Baton Rouge Parish, Louisiana, when a pick-up truck, operated by Harry Cornelius, rear-ended her vehicle. Ms. Hillyard's vehicle was insured by National General Assurance Company (National General); Mr. Cornelius' truck was insured by Shelter Mutual Insurance Company (Shelter). Ms. Hillyard filed this personal injury lawsuit on April 4, 2016, against Mr. Cornelius and Shelter (collectively referred to as "Shelter"), and National General. In her petition, Ms. Hillyard alleged that as a result of the April 30, 2015 rear-end collision, she sustained injuries to her back, right foot, right leg, right hip, and left knee. She sought to recover damages for her physical and mental pain and suffering, medical expenses, loss of enjoyment of life, and lost wages.

In its answer, Shelter admitted that "an extremely minor tap" occurred on April 30, 2015. Shelter alleged that Ms. Hillyard contributed to the accident by stopping in a sudden and unexpected manner, which caused the minor tap.

On July 13, 2016, Ms. Hillyard filed a motion for a status conference for the purpose of selecting a trial date and setting discovery cutoff dates. On September 15, 2016, the trial court issued a Case Management Scheduling Order in chambers which ordered that: (1) discovery be completed by March 31, 2017; (2) all parties exchange pre-trial inserts by April 15, 2017; and (3) the parties file a joint pre-trial order by April 30, 2017.

2

On April 6, 2017, Shelter filed a "Notice of Deposition for Production of Medical Records Only and Subpoena Duces Tecum" directed to the medical custodians for Dr. Stephen Speeg and Baton Rouge Orthopedic to obtain Ms. Hillyard's medical records. On April 11 2017, Shelter's attorney filed an affidavit in the record in which he attested that Ms. Hillyard's attorney had been furnished with a copy of the notice seven days prior to the issuance of the subpoena duces tecum, and no response had been received, thereby compelling the records custodians for the listed medical providers to produce all medical records regarding Ms. Hillyard.

On April 28, 2017, the parties' pre-trial order was filed into the record. Therein, Shelter specifically identified Dr. Speeg as a witness it may call and further indicated that it may introduce any medical records pertaining to Ms. Hillyard's prior condition as exhibits at the trial.

On April 17, 2017, Ms. Hillyard dismissed National General from the litigation. The trial against Shelter was initially scheduled to begin on May 29, 2018. Ms. Hillyard filed a motion to continue the trial, noting that counsel had agreed to mediation, and there was no objection by the defense to the continuance. The trial court granted the motion for continuance on May 24, 2018, and continued the trial without date.

On May 1, 2018, Shelter took the deposition of Dr. Speeg, Ms. Hillyard's primary care physician, who treated Ms. Hillyard from 1994 through the end of 2017. During the deposition, Dr. Speeg was tendered as an expert in internal medicine; no objection was made by Ms. Hillyard's attorney at that time. Dr. Speeg's treatment of Ms. Hillyard for numerous conditions, including back pain prior to the subject accident, was discussed at length during the deposition, and excerpts of medical records discussed during the deposition were offered into

3

evidence as "Exhibit #3" and attached to the deposition. Ms. Hillyard's attorney did not object to the medical records, responding, "that's fine." Ms. Hillyard's attorney also questioned Dr. Speeg about his treatment of Ms. Hillyard during the deposition.

On July 31, 2018, the trial court set the trial to begin on September 23, 2019. On October 19, 2018, the first deposition of Dr. Scott Nyboer, who treated Ms. Hillyard for back pain following the accident and the only expert to testify on her behalf, was taken. By letter dated April 24, 2019, Ms. Hillyard's attorney sent a letter to Dr. Nyboer asking for a clarification of Dr. Nyboer's deposition testimony regarding epidural steroid injections he had given to Ms. Hillyard and which of those injections were related to the April 30, 2015 car accident. On September 13, 2019, Dr. Nyboer testified by video in lieu of his trial testimony.

On August 23, 2019, Ms. Hillyard filed a motion in limine seeking to exclude all evidence, statements, expert reports, IME reports, and/or records submitted by the defense counsel regarding any and all experts and/or physicians pertaining to Ms. Hillyard that were obtained after the deadlines established in the trial court's Case Management Scheduling Order, and to exclude any argument from defense counsel regarding the same. Ms. Hillyard argued that such evidence obtained outside of that schedule was beyond the deadlines provided by law and should be deemed inadmissible.

In opposition to the motion in limine regarding medical records, Shelter submitted that Ms. Hillyard's "vague" request did not specify any evidence Shelter failed to produce prior to the discovery cutoff date. It also stated that Ms. Hillyard had been provided with all pre-accident and post-accident medical records obtained throughout discovery prior to that date. Finally, Shelter asked the court to

4

exclude any of Ms. Hillyard's evidence that had not been provided to Shelter prior to the discovery cutoff date or identified in the scheduling order.

Jury selection began on September 23, 2019, following which both sides presented their opening arguments. On the second day of trial, the jury was read a stipulation that medical records and bills would be submitted from various medical providers. While the defense stipulated as to the authenticity of those medical records, it noted there was a discrepancy regarding the amount of the medical bills for one of the providers. The jury was also informed that Mr. Cornelius passed away on December 9, 2017. The parties stipulated that Mr. Cornelius rear-ended Ms. Hillyard's vehicle on April 30, 2015.

Prior to the start of trial on September 24, 2019, the parties offered their exhibits. Ms. Hillyard offered into evidence Dr. Nyboer's video deposition and transcript of that deposition, along with medical records of other health care providers. Shelter did not object to those exhibits initially. Shelter sought to introduce the deposition testimony of Dr. Speeg, Dr. Speeg's medical records, photographs of Ms. Hillyard's car, and pharmacy records. Ms. Hillyard's attorney objected to the introduction of all of Shelter's evidence on the basis that "defense counsel never answered my discovery, never produced records in discovery, never submitted a pre-trial order, never submitted a list of witnesses or exhibits, never shared exhibits with me." Ms. Hillyard's attorney noted that there was a medical record contained within Dr. Speeg's medical records, which he had only seen the previous day, from a different doctor (Dr. Boucree) with Ms. Hillyard's name on it, which contained a recommendation for back surgery. Ms. Hillyard's attorney then urged that the record actually referred to a different person, as many of the notations thereon had no relation to Ms. Hillyard. Additionally, Ms. Hillyard's

5

attorney objected to the deposition of Dr. Speeg on the basis that the defense did not establish why Dr. Speeg was unavailable for trial.

In response, Shelter argued that it had Dr. Speeg's records for a long time and indicated that copies were made and immediately sent to Ms. Hillyard's attorney. Shelter's attorney informed the trial court that Dr. Speeg was not available for trial because he had prostate cancer and indicated he had a letter documenting Dr. Speeg's illness and his unavailability for trial. Ms. Hillyard's attorney responded that he was not saying that Dr. Speeg was not ill, but that he wanted to see proof of the illness and had yet to see such proof. Shelter then objected to the introduction of Dr. Nyboer's deposition, urging that it was not taken for trial purposes.

The trial court overruled all objections and allowed the introduction of Dr. Speeg's deposition and medical records into evidence, noting that the pre-trial inserts established that Ms. Hillyard's attorney had notice of this evidence. The trial court further stressed that Ms. Hillyard would be given the opportunity to traverse the challenged medical record at trial. The trial court did not require the defense to submit a letter documenting Dr. Speeg's unavailability for trial.

Trial proceeded, with Ms. Hillyard's case consisting of her testimony, the testimony of her daughter, the deposition testimony of Dr. Nyboer, and the records of various medical providers with whom Ms. Hillyard treated following the April 30, 2015 accident. Shelter's case consisted of the deposition testimony of Dr. Speeg, Dr. Speeg's medical records, photographs of Ms. Hillyard's vehicle following the accident, and the records of various pharmacies.

Following the conclusion of the trial, the jury returned a verdict finding that Mr. Cornelius was negligent and his negligence caused the April 30, 2015 accident. The jury further found that Ms. Hillyard was not at fault in causing the

accident and assigned 100% fault to Mr. Cornelius. However, the jury concluded that Ms. Hillyard did not prove by a preponderance of the evidence that she was injured in the April 30, 2015 accident. In accordance with the jury's finding that there was no proof of causation of Ms. Hillyard's injuries, the trial court dismissed the lawsuit with prejudice by judgment dated October 12, 2019.

This appeal, taken by Ms. Hillyard, followed. In three assignments of error, Ms. Hillyard argues that the trial court committed manifest and reversible error in: (1) failing to grant her motion in limine to exclude the erroneous, prejudicial, and untimely obtained and supplied medical records and deposition obtained by Shelter from Dr. Speeg; (2) failing to uphold the objections of her attorney to the admission of defense exhibits; and (3) providing the jury with a verdict form that obviously originated from Shelter and compressed the elements of her damages, thereby prejudicing her.

## EVIDENTIARY CHALLENGE

In her first and second assignments of error, Ms. Hillyard maintains that the trial court committed manifest and reversible error in failing to grant her motion in limine or sustain her evidentiary objections at trial, which sought to exclude the deposition of Dr. Speeg and his medical records. Ms. Hillyard insists that this evidence should have been excluded because Dr. Speeg's deposition was taken after the date set forth in the Case Management Scheduling Order for the completion of discovery. She also contends that Shelter did not give Dr. Speeg's records to her attorney until the day prior to trial. Ms. Hillyard urges that she was prejudiced by the introduction of Dr. Speeg's medical records, because those records contained a medical record from a different doctor (Dr. Boucree) listing her name and referencing pre-existing back issues, which was purportedly used by the defense to show that she had had a previous back surgery, when it was clear

7

that the person referenced in the record was not in fact Ms. Hillyard. She also argues that Dr. Speeg's deposition was taken for discovery purposes only, and Shelter did not justify its use at trial by providing proof of Dr. Speeg's unavailability to the trial court.

The record reflects that the Case Management Scheduling Order set by the trial court required that discovery be completed by March 31, 2017. Dr. Speeg's deposition testimony was not taken until May 1, 2018, fourteen months after that deadline. According to Ms. Hillyard, Dr. Speeg's medical records were not subpoenaed by defense counsel until April 6, 2017, also after the discovery deadline. Even more egregious, she submits, is the fact that Shelter did not give Dr. Speeg's records to her attorney until the day prior to trial. Ms. Hillyard maintains that Dr. Speeg's deposition and medical records impacted the jury's assessment of her pre-accident back condition and whether she sustained lumbar injuries in the instant accident. She insists that these exhibits questioned the veracity of her testimony that she had no prior history of lumbar injuries, were grossly prejudicial, confused the issues before the trial court, and misled the jury into believing that she did not sustain lumbar injuries in the April 30, 2015 accident. Ms. Hillyard contends that because the medical records were not timely subpoenaed or supplied and the deposition of Dr. Speeg was not taken until after the discovery cutoff date, her attorney had no reason to believe that either would be allowed into evidence at trial and did not even see the medical records until just before the trial. She asks this court to find manifest and reversible error in the trial court's refusal to enforce its own scheduling order to her extreme prejudice and in admitting the extremely prejudicial evidence. According to Ms. Hillyard, this case presents a classic example of "trial by ambush."

8

We disagree. A trial court has broad discretion in its evidentiary rulings and its determination will not be overturned on appeal absent an abuse of that discretion. **Chiasson v. Louisiana Medical Mutual Insurance Company**, 2019-0617 (La. App. 1st Cir. 6/18/20), 307 So.3d 204, 208; **Giavotella v. Mitchell**, 2019-0100 (La. App. 1st Cir. 10/24/19), 289 So.3d 1058, 1067, writ denied, 2019-01855 (La. 1/22/20), 291 So.3d 1044. In refusing to exclude Dr. Speeg's deposition and medical records, the trial court stressed that Ms. Hillyard's attorney had notice of this evidence since April of 2017 when the parties submitted their pre-trial inserts. The record amply supports the trial court's conclusion that Ms. Hillyard was on notice of the challenged evidence more than two years prior to the start of trial. Ms. Hillyard failed to show that she was unfairly surprised or prejudiced in any way by the introduction of the deposition testimony and medical records of a physician who had treated her since 1994 for numerous ailments, including back pain, prior to the April 30, 2015 accident.

Moreover, we note that Ms. Hillyard was given the opportunity to demonstrate at trial, through the testimony of two witnesses, that she was not actually the person referenced in Dr. Boucree's medical record.[1] Therefore, we find that Ms. Hillyard failed to prove that the inclusion of this document in Dr. Speeg's records prejudiced her at trial.

Louisiana Code of Civil Procedure article 1450 permits the admission of a deposition at trial by any party if the court finds that the witness is unavailable for trial. La. C.C.P. art. 1450A(3)(a). The determination of whether a witness is unavailable is a preliminary question for the trial court. La. C.E. art. 104A; **Sullivan v. City of Baton Rouge**, 2014-0964 (La. App. 1st Cir. 1/27/15), 170 So.3d 186, 194. A court may consider otherwise inadmissible evidence in making

---

[1] The trial court allowed Ms. Hillyard's attorney wide latitude in questioning the witnesses to allow them to refute each and every allegation made in Dr. Boucree's medical records.

9

this factual determination. **Id**. An attorney's representations of his efforts to locate a witness has been held sufficient to establish a witness's unavailability. See **Ball v. Capital City Cornichon Corp.**, 2011-1862 (La. App. 1st Cir. 5/2/12), 2012 WL 1550545, *3-4, writ denied, 2012-1448 (La. 1/18/13), 107 So.3d 623.

A trial court is vested with broad discretion in determining whether a witness is unavailable within the meaning of Article 1450, and the trial court's decision to allow the use of deposition testimony at trial will not be disturbed in the absence of an abuse of that broad discretion. **Sullivan**, 170 So.3d at 194. In admitting the deposition testimony of Dr. Speeg's deposition testimony over Ms. Hillyard's objection, the trial court obviously found that Dr. Speeg was unavailable to testify at trial due to illness. Further, Ms. Hillyard's attorney was present at the deposition and had the opportunity to question Dr. Speeg at that time. The trial did not abuse its discretion in permitting Shelter to introduce the deposition testimony of Dr. Speeg at trial.

Considering all of the circumstances of this case, we conclude that Ms. Hillyard failed to demonstrate that the trial court erred in allowing the introduction of Dr. Speeg's deposition testimony and medical records into evidence. Therefore, we find no merit in the first two assignments of error.

## JURY VERDICT FORM

In her third assignment of error, Ms. Hillyard contends that the trial court erroneously provided the jury with a "non-standard" jury verdict form that obviously originated from the defense, lending the impression that the trial court "somehow favored the defense." She also contends that the form prejudiced her case by compressing and generalizing her elements of damages, as the broad categories of general damages denied the jury the ability to see, review, and reflect on the various elements of damage that were compensable in this case.

10

Under the guidelines of La. C.C.P. art. 1812, a trial court has wide discretion in determining and framing the issues to be posed as special interrogatories, and absent an abuse of that discretion, a court will not set aside those determinations. **Schram v. Chaisson**, 2003-2307 (La. App. 1st Cir. 9/17/04), 888 So.2d 247, 251. In reviewing a jury verdict form, this court employs a manifest error, abuse of discretion test. **Townes v. Liberty Mutual Insurance Company**, 2009-2110 (La. App. 1st Cir. 5/7/10), 41 So.3d 520, 527. Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. **Id**. It is well settled that a verdict form may not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict on correct law and facts. **Abney v. Smith**, 2009-0794 (La. App. 1st Cir. 2/8/10), 35 So.3d 279, 283, writ denied, 2010-0547 (La. 5/7/10), 34 So.3d 864. If the verdict form does not adequately set forth the issues to be decided by the jury, such as omitting an applicable essential legal principle, or is misleading or confusing, such interrogatories may constitute reversible error. **Id**.

The record reflects that the trial court read the jury verdict form into the record after the jury rendered its verdict. The form, as read by the trial court, contained the following statement: "Now into court, through undersigned counsel come the defendants, Harry Cornelius and Shelter Mutual Insurance Company, respectfully submit the following jury interrogatories to be placed on the verdict form." The first question on the jury verdict form asked whether Mr. Cornelius was negligent and whether his negligence was the cause of the accident, to which the jury answered, "Yes." The second question asked whether Ms. Hillyard was negligent and whether her negligence was a cause of the accident, to which the jury answered "No." The verdict form then asked the jury to assign a percentage of fault; the jury assigned 100% fault to Mr. Cornelius and 0% fault to Ms. Hillyard.

11

The jury was then asked whether it found by a preponderance of the evidence that Ms. Hillyard was injured in the April 30, 2015 accident, to which the jury responded "No." The jury verdict form apprised the jury that if its answer was "no," to sign and date the verdict form. The trial court noted that the jury had signed and dated the form.

Shelter admits that its name was left on the jury verdict form, but submits that even if the jury did notice the inclusion of its name on the jury verdict form, any error was harmless when considering the evidence as a whole.

After reviewing the record, we find that Ms. Hillyard failed to demonstrate that the jury verdict form was so inadequate that it prevented the jury from reaching a decision on the law and facts. We find that the reference to Shelter in the heading of the jury verdict form was simply an oversight to which Ms. Hillyard did not object, and which was in no way intended to sway the jury in favor of Shelter. In fact, despite the reference to Shelter in the heading of the verdict form, the jury found Shelter's insured to be 100% at fault in causing the accident and further found no fault on Ms. Hillyard's part. The jury's correct response to these questions indicates that the jury understood both the law and its responsibility in deciding the case. Apparently, the jury concluded that Ms. Hillyard was not injured by the minor collision between her vehicle and Mr. Cornelius' vehicle. After reviewing the entire record, we can only conclude that the jury's causation determination, which resulted from its weighing of all of the testimonial, medical, and documentary evidence adduced at trial, was not manifestly erroneous. Further, the jury verdict form did not lead the jury to reach a causation determination that is not reasonably supported by the record, and we find no merit in this assignment of error.

12

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff, Shelia Hillyard.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2020 CA 0428

SHELIA HILLYARD

VERSUS

HARRY CORNELIUS,
SHELTER MUTUAL INSURANCE COMPANY,
AND NATIONAL GENERAL ASSURANCE COMPANY

McDONALD, J., concurring.

I agree with the result reached by the majority but write separately regarding the trial court's ruling as to the admissibility of Dr. Speeg's deposition at trial based on Shelter's counsel's representation that Dr. Speeg was unavailable due to illness.

Determining a witness's unavailability is a preliminary question under La. C.E. art. 104A. The trial court is not bound by the rules of evidence in making this determination and may consider otherwise inadmissible evidence. *See* La. C.E. art. 104A; *Folse v. Folse*, 738 So.2d 1040, 1039 (La. 1999). As the majority notes, this court has found an attorney's unsworn representations regarding his efforts to locate a witness are sufficient to establish a witness's unavailability. *See Ball v. Capital City Cornichon Corp.*, 11-1862 (La. App. 1 Cir. 5/2/12), 2012 WL 1550545, *3-4. I believe the better practice, however, would be for the trial court to require the attorney to be sworn in and to then have him testify under oath as to his witness's unavailability. *Accord Folse v. Folse*, 98-1976 (La. 6/29/99), 738 So.2d 1040, 1049 (noting the trial court took testimony to determine whether a witness was unavailable to testify); *State v. Sanderson*, 49,957 (La. App. 2 Cir. 7/22/15), 174 So.3d 149, 164 (noting the trial court accepted an investigator's testimony to determine the availability of a witness).