DREW, J.
 

 BA jury found Bruce Lee Goss guilty of molestation of a juvenile, La. R.S. 14:81.2. He was sentenced to 15 years at hard labor, with all but five and one-half years suspended. The defendant was placed on supervised probation for five years
 
 [1]
 
 and ordered to pay court costs. We affirm in all respects.
 

 FACTS
 

 On December 4, 2007, Lewis Welch, a retired Shreveport patrol sergeant, noticed a vehicle back into the driveway of a vacant house on his street. Due to recent break-ins and vandalism, the owner had asked Welch to keep an eye on the property. Welch contacted the Shreveport Police Department (“SPD”). Officers were dispatched, with Officer Matt Green being first to respond.
 

 Green saw a dark-colored vehicle with fogged windows in the carport. The vehicle itself was rocking back and forth. The officer requested backup assistance.
 

 As Green approached the vehicle, he saw a black male, later identified as the 50-year-old defendant, in the back seat.
 
 *8
 
 The officer called for the defendant to show his hands and exit the vehicle. The defendant did not immediately obey, and the officer could see him moving around in the vehicle, but could not tell what he was doing. After repeated requests, the defendant opened the passenger door and stepped out, pulling up his pants and sweating profusely. He denied breaking into the house. When asked if |2anyone else was in the vehicle, he said that his daughter was, and that they had been asleep in the vehicle, waiting for another daughter to get off work.
 

 The defendant was secured. SPD Officers Green, Pettigrew, and Rose approached the vehicle again. The officers saw a young female on the back seat floorboard. She was covered with a white blanket,
 
 [2]
 
 and her panties were pulled down to her ankles. Green saw clothing on the front seat. He ordered her out of the vehicle. Initially, she did not move. In response to a second command, she removed the blanket from her face and told the officers she could not move.
 

 The girl identified herself as 13-year-old B.S.
 
 [3]
 
 She started crying, saying she could not move; the officers believed it was associated with her state of undress so they gave her some privacy before she got out. Once dressed, she sat in the car for about 20 minutes. Pettigrew thought he recognized her and asked if she knew him. She confirmed that he had been her school resource officer, telling the officers that:
 

 • nothing had happened between herself and the defendant;
 

 • they had been asleep in the vehicle;
 

 • they were waiting for his daughter to get off work so they could pick her up;
 

 • the defendant, who she indicated was her father, would not touch her; and
 

 • she would not have let him touch her.
 

 | sPatrol Sergeant Rita Caldwell and Detective Jeff Allday of the SPD sex crimes unit, as well as a representative from Child Protective Services, arrived on the scene.
 

 B.S. denied that her underwear had been around her ankles when the police arrived. She was taken home where the officers spoke with her mother, C.R., and her grandmother, A.R. C.R. took her to the Gingerbread House for a statement. B.S.’s panties were collected as evidence.
 
 [4]
 

 During the trial of the matter, the patrol officers and detectives provided consistent accounts of the events as they unfolded on December 4, 2007.
 

 B.S. also testified. Her account of the events was the same as her recorded statement taken at the Gingerbread House. The recorded statement was played for the jury. During the taping, B.S. expressed concern about whether she would get in trouble for making her statement. She eventually wrote her statement and presented it to the examiner.
 
 [5]
 
 B.S. identified anatomical drawings, referring to the de
 
 *9
 
 fendant’s penis as his “private” and her “private” as her “p-u-*-*-y.”
 

 At trial, B.S. testified that:
 

 • in late 2007, the defendant was her pastor and was living with her family;
 

 • B.S. admitted that “we were having sex” when the police arrived;
 

 |4« the defendant pushed her to the floor of the vehicle as the officers approached;
 

 • the officers asked her to get up from the floor of the vehicle;
 

 • she responded negatively because she was naked under the sheet;
 

 • she initially thought she would be in trouble because of what had happened;
 

 • she said she considered the defendant as her father as well as her pastor;
 

 • she respected him and had to obey him;
 

 • she initially told police officers that nothing happened because she was scared;
 

 • she was afraid her family would think poorly of her because of the acts;
 

 • sex occurred between them several times on different occasions; and
 

 • the defendant never used any protection.
 

 A.R. testified that the victim had lived with her for most of her life. She said that the defendant was her pastor and her friend, with whom she had been in a romantic relationship in previous years. The defendant had lived with A.R. but he had only occasionally stayed there at the time of his arrest. Amazingly, even after what took place with B.S., A.R. continued to attend the defendant’s church.
 

 Laterrica Reddix, B.S.’s cousin, testified that she was living with the victim at the time this happened. When B.S. arrived at the house, she claimed that the police were trying to make her say that the defendant had touched her. Ms. Reddix believed that the victim’s mother initially acted indifferently to her daughter, but after the incident, B.S. and her mother became closer. Ms. Reddix stated the defendant was a godfather to her and | Bwas still her pastor at the time of the trial. She sometimes call the defendant “Dad” or “pastor.”
 

 The defendant testified that:
 

 • he once leased the property where he was arrested;
 

 • at the time of the incident, he was not leasing the property;
 

 • he would often park there because it was well lighted, and he knew the owner;
 

 • he suffered various illnesses, the medication for which caused side effects, including drowsiness, which was the situation the day he was arrested;
 

 • the medication made him sweat;
 

 • he never took his pants down in the car that night;
 

 • he denied touching B.S. inappropriately or having sex with her; and
 

 • he further blamed the prosecution on the child’s mother, who had been jailed for financial crimes committed while she worked for the defendant.
 

 He was found guilty and sentenced as previously outlined.
 

 DISCUSSION
 

 Sufficiency
 

 The defendant claims the evidence was insufficient to prove all elements of this offense, specifically that the victim was physically harmed or that he used force, violence, or intimidation to perpetrate the alleged acts. He also posits there was insufficient evidence that he exercised supervision or control over the victim.
 

 Unsurprisingly, the state disagrees.
 

 
 *10
 
 Molestation of a juvenile is defined in La. R.S. 14:81.2(A), in pertinent part:
 

 | ^Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
 

 Our law is well settled as to appellate review of insufficiency claims.
 
 [6]
 

 Based on the testimony presented during the trial, the state was able to prove beyond a reasonable doubt that the defendant was guilty of the |7charged offense. The state proved that he was 50 years old at the time of the offense; B.S. was only 13.
 

 The act of sex with the child is sufficient to satisfy the element of commission of a lewd or lascivious act upon her with the intent of gratifying his sexual desires. The child was afraid to admit the acts, because of what her family might think. She also testified that the defendant was her grandmother’s boyfriend and lived with them. He was also the victim’s lifelong pastor and father figure.
 

 The defendant’s denial of supervision or control rings hollow, as he frequently had the victim in his charge with
 
 *11
 
 out other adults present. These were the times when he committed his perverted acts. He used his position of control and supervision to influence the victim to participate in his unseemly acts.
 

 The state presented evidence that the windows were fogged, and that the car was rocking. This corroborates the child’s testimony that the defendant was having sex with her when the police arrived. The officers noted that he had to pull up his pants as he exited the vehicle, and that B.S. was partially clad with her panties around her knees or ankles. There is no question that the state carried its burden of proof. The jury apparently believed the child and disbelieved the defendant.
 

 DECREE
 

 The defendant’s conviction and sentence are AFFIRMED.
 

 [1]
 

 . The probation time would commence upon his release from parole.
 

 [2]
 

 . The officers testifying during the trial identified the covering as either a blanket or a sheet. State Exhibits 2-4 are pictures of items found inside the vehicle. What appears to be a white flowered blanket can be seen in the pictures.
 

 [3]
 

 . In accordance with La. R.S. 46:1844(W), the minor child and her family will be referred to by their initials to protect the victim's identity.
 

 [4]
 

 . During the trial, Dr. Pat Wojtkiewicz of the North Louisiana Crime Lab testified the victim's panties were analyzed by the North Louisiana Crime Lab; however, no traces of semen were found on the panties.
 

 [5]
 

 . B.S. read the statement in court during the trial, “Well, he took my — his clothes off then tried to take mine off, I said no. I said no then he took it off anyway. Then he put his private into mine and that was that.”
 

 [6]
 

 . The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied.
 

 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La. 11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.
 
 State v. Robinson,
 
 36,147 (La.App.2d Cir. 12/11/02), 833 So.2d 1207;
 
 State v. Ponsell,
 
 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678,
 
 writ denied,
 
 2000-2726 (La. 10/12/01), 799 So.2d 490.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La. 1/26/00), 775 So.2d 1022,
 
 cert, denied.